Ms. Lee's. So we can go ahead with petitioner's argument. The case is set for ten minutes per side. So if you can stop before it's all gone, we'll appreciate it. So good afternoon. This is Chung Fong appearing on behalf of Petitioner Chih-Siu-Hua and good afternoon and honor to meet you all. And I'd like to respectfully reserve two minutes of rebuttal time. I'll try to remind you, but watch the clock yourself too. Thank you very much, Judge Goh. So this case actually arises under an act of Congress 1101A-42B, which specifically grants protection to principally Chinese nationals who are victims of the country's coercive family planning policy. And this court had dealt several times with such cases. But in this case, the immigration judge basically credited the applicant with the core claim, i.e. the fact that she suffered two false abortions while in China. One being in 1997 and the other one in the year 2000, after which she left China and then eventually came to the Peace Arch of Canada to request asylum. So the immigration judge found no problem with the court testimony. Nonetheless, denied asylum. Is that clear from the ruling? You know, the judge goes through some of the inconsistencies. And you're right. I mean, surprisingly, he doesn't. He's willing to give her the benefit of the doubt on all the inconsistencies that relate to the underlying events, but then finds wholly, wholly incredible other things about how she came into the country, etc. Yes. Do we need to send this back for clarification? Or do you think it's clear enough that the immigration judge believed that the underlying forced abortions? Yes, there was some areas of confusion in the record. But in communication issue, the judge acknowledged. For example, whether it was the village director or the family planning director. Those are terminological translation issues which weren't clarified. I believe the judge ultimately ended up basically crediting the claim. And then he himself, I think, said... But if he credited the claim, why would he deny relief? Just because you can't deny relief. Exactly. It's not natural just because you're a liar. But he denied the claim. So does that suggest he didn't believe the underlying events happened? Yes. Yes. He denied the claim based on negative credibility, impossibility, based on three grounds. Okay. Those are all, by the way, incidental to the claim itself. One is, it's implausible for Ms. Shi to have entered the US through Canada from the International Peace Arch without encountering any agent, any Border Patrol agent. That's the first ground. The second relates to, again, an incidental issue about the timing of a decision to seek asylum. The judge believed that, you know, that she had a prior intent conception of seeking asylum, but was not candid about that. Okay. And the third reason is the smile. The smile when questioned about her intent, although in the record it's really not clear at what point the smile occurred, because the record doesn't show that. We have the judge's decision. They say when questioned about her intent, she smiled. And that smile to the judge meant she had the intent all along. And therefore, there's additional ground, demeanor-based ground for negative credibility, Your Honor. If I can address the smile. If the immigration judge had said demeanor, and had given sort of standard demeanor evaluation, I might be inclined to credit because we're supposed to allow the fact finder to evaluate demeanor. But just because there was a smile, I don't, that doesn't strike me as very useful. But talk to me about particularly, first off, about the Peace Arch. She testifies that she didn't see anybody when she was at the Peace Arch. She was let off at the north end on the Canadian side of the park. She walked through the park. She took some pictures and then walked out the south side of the park on the U.S. side and was picked up. Why is it not so improbable that she saw no immigration officer in that entire time? And she's not, I mean, I know, I looked at the map of the Peace Arch Park. I've been through that border many times. She'd been at the far eastern end, maybe so. But she's at the populous part where there is the Peace Arch. Why is the IJ wrong to find it so unlikely as to be incredible when she says, I saw no immigration officer, either American or Canadian? Yes. So the, you know, the, I think on that point, Your Honor, I've thought a bit about that. And so apparently in the record, there's confusion whether she actually walked through an official border checkpoint. The IJ assumed that she did. And that's the problem, I think. That's where the incredibility comes after that. If she did go through a border checkpoint, as the judge put it, a turnstile, you know, then it would be incredible that she would not see any border agent. But nothing in the record indicated that she acknowledged or she knew what the immigration checkpoint looked like or what the line would have looked like. Yeah, when questioned about that, the judge basically gave a binary choice and described the location. There's this beautiful minicube park with flowers and lawn and grass area. And then there's another area, which is untended forest area bordered by a fence. So which one did you, which one did you go through the park? So she answered twice that confirmed that she went through the park. But nothing in the record, nothing in her testimony indicated she first of all knew what a border agent looked like or what the checkpoint looked like. And she consistently testified that she went through a park. Okay, so the negative credibility finding based on that, I think part is kind of like a misunderstanding of the context of the question, the way the judge put it. And such misunderstanding is very common in immigration cases when you're testifying in foreign language. Okay. And so once the confusion is understood, it will be shown the record doesn't reflect that she actually went through an actual border checkpoint. Mr. Foy, did you want to reserve time for rebuttal? Yes, Your Honor, I reserve two minutes for rebuttal. Thank you, Your Honor. So the other ground is the decision making, when did she decide to seek asylum? Okay. So in the record, there's some confusion in terms of the meaning of the question asked by the financial or economic sustain. And she testified that once she got a job, she was put in a family hotel, then she decided to stay. So the judge took that to mean that she testified inconsistently that she had testified that she never intended to stay. But once the record is clarified, she did affirm that she had intended to stay. Asylum is a completely separate issue, Your Honor. She's living in a closed society. She was at the last, you know, according to the immigration record, she was a soybean farmer. Okay. So in the condition where she was in, there's no way she could have had knowledge, access to knowledge, you know, for asylum. And she did indicate that when an intermediary who brought her here told her that to stay, to adjust your status, you got to seek asylum. That's when she decided. So I think the record is devoid of any evidence that she had a preconceived intent to seek asylum. But the record is pretty clear that once she got the information about asylum, she did seek asylum. Thank you, Your Honor. That's all I have. Thank you. For your planning purposes, you're down to a little less than a minute of time, but I'll give you your full two minute rebuttal. So the clerk can put Mr. Fong's block at two minutes for rebuttal. And we will hear from Miss Lees. May it please the court. My name is Kitty Lees and I'm appearing on behalf of the Attorney General. The court should deny the petition for review because the petitioner has not shown that the record compels reversal of the agency's denial of her applications for asylum and withholding of removal. And she has waived her claim for cat protection. What's your response to his contention that the IJ actually credited the underlying events by not finding her to be not credible on the specific issues relating to the underlying events? Well, since the Real ID Act, Your Honor, the inconsistencies that the average credibility finding does not need to go to the heart of the of the no question about that. The question is, did the IJ based on those, you know, other inconsistencies make the finding that the events did not happen? Your Honor, the immigration judge stated that given the implausibilities of how she entered the country and whether or not she saw border agents when crossing the border that it cast doubt on whether the persecution occurred. He said at one point in the decision, how am I to believe that anything she says is true? And I can find the exact record site of that if you would like me to. Yeah, it's clear he did not believe some significant aspects of her testimony. But I don't see where he really ties it back to saying and therefore all this stuff didn't happen. The only time he talks about the underlying events, he says he he gives a benefit of the doubt. It's kind of an odd sort of ruling. Yes, but even then the adverse credibility finding the petitioner cannot meet her burden for asylum in general if there's an adverse credibility finding when considering the totality of circumstances, including how she entered this country, it then cast doubt on whether the persecution actually exists and she can't meet her burden for relief. And there. The substantial evidence supports the agency's adverse credibility finding that her testimony was implausible when she testified that she did not have any plans to stay in the United States, despite her several attempts to fraudulently enter this country, which didn't occur until 10 years after the alleged persecution happened. When confronted with this implausibility, petitioner smiled broadly, which the agency properly considered in its adverse credibility finding. Petitioners credibility was further eroded by her implausible testimony that she did not see a single official, whether from Canada or the United States, when crossing into the United States through a major point of entry. This implausibility finding is properly based on reasonable assumptions by the immigration judge, even if other alternative explanations exist. Because no, help me out with this question on the Peace Park. What we have is a port of entry where the cars go through and then we've got a very large grassy park with a very nice white peace arch. I don't think the IJ had any real evidence in front of him like pictures of the park. The IJ doesn't say, I am myself familiar with the park. The IJ just says, I just don't believe it. Help me out a little bit. I'm not that's possible. Yeah, well, this court has recently clarified that an immigration judge can rest in implausibility finding on common sense. I mean, here, the immigration judges common sense told him that when crossing through a point of entry, there would at least be an official from either Canada or the United States around and she said she was asked multiple times if she saw an official from either country and she said that she did not see a single official. And that is a reasonable assumption for the immigration judge to make, even if there's alternative explanations for her answer. If I get back to the original, the first point of whether it was implausible whether she would not stay in the United States, she testified that she didn't have a plan to stay in the United States, even though she had begun a scheme to enter this country that was very complicated and intricate. She had gone to China to try or to Europe to try and pad her passport to make it more eligible for her to come to the United States. She twice tried to fraudulently apply for a visa. She got the help of an intermediary to get her a fake husband, fake employment documents so that she could try and come here when that was denied twice. She then got a business visa from Canada to go to Canada. She then used the help of an intermediary to go through the Canada. Someone told her to look like a tourist and take pictures while crossing through the Peace Park to where someone was waiting for her on the other side. When considering this complicated scheme, the immigration judge reasonably concluded that it was implausible that she had not even thought about staying in the United States and that it wasn't the plan for her all along to apply for asylum when she got here. This again, this implausibility finding was based on common sense by the immigration judge, which was appropriate for him. I want to go back to the problem I started with and I'm looking at page 48 of the administrative record when he goes through the two points that bear on the underlying claims and the second one in particular. Likewise, the respondents explanation of why she said she had to have another abortion or pay a fine. I do find her explanation to be credible. So he makes a favorable credibility finding that she had to have another abortion and why? But if she had a forced abortion and under the statute, she's entitled to relief, you can disbelieve every other word she said. And under Ming Dai, IJ can make partial credibility findings. Why didn't and then he says he denies it based on the fact that she lies a lot. And I don't. Why doesn't this have to go back to clarify what he found? Because I'm not sure I know what he meant. My understanding of the immigration judge's decision here is that he saw that there was other inconsistencies and confusion in the record and was clarifying that he was not basing his on the other implausibilities and fraudulent. The language I just quoted goes beyond that. He said, I do find her explanation to be credible. He says he believes it. I would argue that the immigration judge's statement in in that area was referring to her explanations when confronted with those inconsistencies. So he's not necessarily saying that he finds her claim overall to be credible. He's saying that those explanations that she gave to those inconsistencies that he pointed out, he found those to be believable and credible. But he doesn't say in his decision, does that make any sense? I believe your explanation. I believe your explanation about an event that didn't happen. Well, it's not necessarily saying that the event did or did not happen. And adverse credibility saying is that she didn't meet her burden with credible testimony to show that she is eligible for asylum. And so that is what the immigration judge found here that she didn't meet her burden when considering the totality of the circumstances. She didn't meet her burden to show that she is a credible applicant for asylum. Finally, when relating to the demeanor finding with the smile that she gave when confronted with the implausibility that she didn't have a plan to the immigration judges demeanor finding because it was one of those nonverbal cues, like petitioner smile in this instance that this court gives special deference to the immigration judge reasonably concluded that this smile meant that she did indeed have a plan to come to the United States and apply for asylum throughout this whole intricate scheme that she had when coming here, even though her testimony said otherwise, when considering the totality of the circumstances, it was appropriate for the immigration judge to include this smile and I've reviewed an awful lot of demeanor based credibility determinations, mostly in immigration cases, but not entirely. This is the first time I've ever seen a demeanor credibility finding based upon a smile. It's usually hesitation, sweating, eyes looking around the room, various things, smiles can mean all kinds of things, including just social nervousness, gratiating, I mean, I have to say that ordinarily, I would give great deference to a demeanor finding. But this one, I just, it doesn't say much to me one way or the other. Well, the record doesn't compel reversal of the immigration judges demeanor finding in this instance. Even if there's other ultimate explanations as to why she smiled, and the petitioner didn't bring up any explanation for this smile before the agency for it to determine why she saw she's never explained before this opening brief on appeal, why she smiled in that instance. And even then, she argues that, oh, there's all of these reasons that someone might smile, but she doesn't say particularly why she smiled. In this instance, the record doesn't compel reversal of the immigration judges demeanor finding in this instance, especially when the court gives that special deference. I see that I'm out of time. If there's any further questions, I would just conclude and say that a reasonable adjudicator would not be compelled to overturn the agency's adverse credibility finding in this instance, and therefore the petition for review should be denied. Thank you. Thank you, Ms. Lees. Well, Mr. Fong. Thank you, Your Honor. So I think when I look at the judge's decision, to me, it seems quite clear that in the language of the decision that he deemed the case grantable. You know, so he said on AR-54 that you know, it requires me to find persecution on account of political opinion. If the Board of Appeals disagree with my credibility finding, there should be no need for the case to be remanded. Okay, the proper result would be to simply grant the case. That's from the judge's own language. Now, in terms of previous visa fraud, Your Honor, the client had been completely candid in her testimony that she did it on the advice of the intermediary. As too often is the case, people who want to escape their country of persecution, they have no direct, easy means of coming. So they do resort to such, what we don't welcome to be, you know, this kind of tactics. But she was candid about it. There's nothing incredible about testimony that she did so on the advice of the intermediary because intermediary had advised her that's the only way you're going to get into the United States. Okay, and she followed the advice. And so, you know, all being past immigration fraud, even passport fraud was not a ground to deny an asylum case. And I think the Kabul case in this circuit expressly stated that. So the passport, you know, because it was the only way to get here. And her testimony was completely candid on that point. Thank you, Your Honor. My time is up. Thank you. Thank you, counsel. The G.V. Garland case shall now be submitted. We thank Mr. Fong and Ms. Leeds for your excellent arguments. Thank you very much, Your Honor. And what an honor to meet all of you. Thank you so much. Bye-bye. You'll hear from us in due course. We proceed.
judges: FLETCHER, GOULD, COLLINS